IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

HEATHER M. EVERETT, :
:
    Plaintiff, :
:
vs. :
: CIVIL ACTION 14-0573-M
CAROLYN W. COLVIN, :
Social Security Commissioner, :
:
    Defendant. :

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 405(g), Plaintiff seeks judicial review of an adverse social security ruling denying a claim for disability insurance benefits (Docs. 1, 10). The parties filed written consent and this action was referred to the undersigned Magistrate Judge to conduct all proceedings and order judgment in accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc. 19). Oral argument was waived in this action (Doc. 21). After considering the administrative record, the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence.

1

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  Substantial evidence requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was forty-four years old, had completed a high school education (Tr. 190), and had previous work experience as an administrative assistant, an accounting manager, construction representative, assistant to the resident engineer, senior inspector, and an administrative assistant to an engineer (Tr. 194-96).  Plaintiff alleges disability due to injuries from a motor vehicle accident and degenerative disc disease (Doc. 10 Fact Sheet).

The Plaintiff applied for disability benefits on March 19, 2012, alleging a disability onset date of February 18, 2011 (Tr. 165, 265-66).  An Administrative Law Judge (hereinafter *ALJ*) denied benefits, determining that Everett was capable of performing her past relevant work as a construction representative, assistant to the resident engineer, secretary, account manager, and commercial developer coordinator (Tr. 165-76).  Plaintiff requested review of the hearing decision (Tr. 159-61), but the Appeals Council denied it (Tr. 116-21).

Plaintiff claims that the opinion of the ALJ is not

2

supported by substantial evidence.  Specifically, Everett alleges that:  (1) The ALJ improperly discredited her testimony; (2) the ALJ failed to properly develop the record; and (3) the Appeals Council did not properly consider newly-submitted evidence (Doc. 10).  Defendant has responded to—and denies—these claims (Doc. 15).  The relevant evidence of record follows.

On July 11, 2011, Covington Multicare Clinic records show Plaintiff appeared to establish care for hypertension; she had full range of motion (hereinafter *ROM*) in her back with no tenderness (Tr. 354-58).  On July 22, Everett complained of back pain for five months following a motor vehicle accident; the pain had gotten worse after discontinuing Naproxen[1] (Tr. 359-62). X-rays revealed mild degenerative changes in the lower lumbar spine with muscle spasms in the cervical spine, but nothing else significant (Tr. 341-3; 363-65).  An exam showed full neck ROM with some trapezius tenderness bilaterally; forward flexion was slightly decreased in Everett's back (Tr. 345).  On July 27, a physical therapy (hereinafter *PT*) evaluation was completed (Tr. 367-70); PT treatments began two days later and Plaintiff had nine sessions over a month's time (Tr. 372-408).

On August 29, 2011, an MRI of the lumbar spine showed mild

---

[1] **Error! Main Document Only.***Naprosyn*, or *Naproxyn*, "is a nonsteroidal anti-inflammatory drug with analgesic and antipyretic properties" used, *inter alia*, for the relief of mild to moderate pain. *Physician's Desk Reference* 2458 (52nd ed. 1998).

disk bulge at L4-L5, severe thecal sac stenosis at L5-S1, and severe left-sided and mild right-sided L5-S1 neural foraminal narrowing (Tr. 340, 410).  On August 31, Everett told her doctor that her neck pain had improved with PT, though she still had low back pain radiating into the left leg with some numbness in that foot at times (Tr. 409-13).

On September 26, records from the Virginia Mason Medical Center reveal that Plaintiff was examined and found to have some limited cervical spine ROM though lumbar spine ROM was normal (Tr. 421-22, 430-32).  On October 4, she had an epidural steroid injection for her back pain (Tr. 427-30).  On November 15, Everett had another injection, following a misstep three weeks earlier, causing her pain to return (Tr. 424-25).

On February 8, 2012, Plaintiff went to a Neurosurgery Center, complaining of ongoing and continuing buttocks and lower extremity pain; Dr. Juan F. Ronderos noted normal gait and that muscle strength, tone, and size were intact and symmetrical in all four extremities (Tr. 441-45).  Straight leg raising was positive on the right, producing back and leg pain.  The Doctor's assessment was lumbar intervertebral disc without myelopathy and back pain; an MRI of the lumbar spine, when compared to a previous study, showed that disc herniation at L5-S1 had become significantly more centralized in character and location.

On February 14, 2012, Charla Evans, D.O., saw Plaintiff for sinus congestion, fever, and shortness of breath; pneumonia was diagnosed (Tr. 491-92).  On February 27, a chest x-ray of the heart, lungs, and mediastinum was normal (Tr. 495).

On February 22, Dr. Robert L. White, at Coastal Neurological Institute, examined Everett for low back pain, muscle cramps, joint pain, and headaches; it was the first of three visits during the course of one month (Tr. 470-79).  The Doctor prescribed Flexeril[2] and added a lumbosacral brace on the second visit (Tr. 473-75, 479).

On March 7, 2012, Everett underwent an interlaminar epidural at Surgicare of Mobile (Tr. 450-65).

On March 6, 2012, Dr. Todd Engerson, with the Orthopaedic Group, examined Plaintiff for severe tingling in both hands, greater on the left; he noted that she was tender over the extensor origin, but had no evidence of arthritis in any of her joints (Tr. 466).  Dr. Engerson's opinion was that Plaintiff had either cervical radiculopathy or carpal tunnel syndrome.  Six days later, Dr. Chris Nichols, also with the Orthopaedic Group, noted that EMG nerve studies completed weeks earlier were normal; neck ROM was full in all planes (Tr. 467-68).  Everett

---

[2]**Error! Main Document Only.**Flexeril is used along with "rest and physical therapy for relief of muscle spasm associated with acute, painful musculoskeletal conditions."  *Physician's Desk Reference* 1455-57 (48th ed. 1994).

5

had some shoulder discomfort with abduction, external rotation but no radicular symptoms in the left arm; she had tenderness in the pulp of the left thumb. Tinel's was provocative in both median nerves while Phalen's was a problem bilaterally; Nichols found evidence of mild bilateral carpal tunnel syndrome.

On May 17, 2012, Orthopedic Engerson noted that Everett's carpal tunnel symptoms were better, but she had pain in and around her left hip; he noted excellent hip ROM with absolutely no groin pain though she was real tender right on the tip of the trochanter, gluteal tendon, and over the trochanteric prominence (Tr. 499). The Doctor's impression was gluteal tendinitis and trochanteric bursitis for which he gave her an injection.

On June 21, Leslie Rush, D.O., at Baldwin Bone & Joint, examined Plaintiff for left lower extremity pain, radiating into the buttocks as well as cervical spine and left shoulder pain; Everett reported that the previous epidural had helped with the radiating leg pain, but it was still substantial in her back (Tr. 509-10). Pain ran to six or seven on a ten-point scale, though it was three on that day; straight leg raising was positive on the left, but negative on the right. Muscle strength was intact. Plaintiff had difficulty with extension, with increased back pain, in standing position; left side bending caused pain and with combined rotation, it was worse. Review of the MRI showed significant degenerative disc disease

6

at the L5-S1 level with a large central disc protrusion; there were early changes at the L4-5 level and also mild facet joint arthritis.  Surgery versus conservative treatment was discussed; she had an injection on July 11, 2012 (Tr. 511).  Two weeks later, Everett returned with continued low back pain, through the right buttock and into the left leg; she rated her pain as four or five and said it was aggravated by sitting, standing, walking, leaning back, and coughing (Tr. 512).  The Doctor again recommended surgery.

On July 2, D.O. Evans diagnosed Plaintiff to have diabetes mellitus II, hypertension, and obesity (Tr. 507).

On March 20, 2012, Dr. White treated Everett whose primary complaint was neck pain, but she also referenced muscle cramps, joint pain, back pain, stiffness, and muscle aches; the Doctor noted restricted cervical motion with cervical muscle spasm for which he recommended traction and a lumbar brace (Tr. 519-22). On June 14, noting that Plaintiff' lumbar ROM was eighty percent of normal, White prescribed Flexeril and Mobic[3] for pain (Tr. 523-26).  On July 30, Dr. Edward L. Flute examined Plaintiff for continuing lumbar spine pain that she rated as severe (Tr. 515-18).  On September 19, following bilateral L5-S1 micro lumbar

---

[3]**Error! Main Document Only.***Mobic* is a nonsteroidal anti-inflammatory drug used for the relief of signs and symptoms of osteoarthritis and rheumatoid arthritis.  *Physician's Desk Reference* 855-57 (62nd ed. 2008).

7

discectomy two weeks earlier (Tr. 513-14), Everett's incision was healing well; she was taking Lortab[4] (Tr. 527-30).

On October 22, 2012, Everett reported that her leg pain had improved but she was still having significant axial back pain that she rated at six (Tr. 548-51).  Dr. Flotte noted no spinal deformity or scoliosis with normal posture and gait; she had normal, full ROM in all extremities.  An MRI showed that the bilateral laminectomy and partial discectomy at L5-S1 had shown improvement in Plaintiff's back though there was scar formation and mild right and moderate left foraminal encroachment; also, there was mild central canal narrowing at the L4-5 level (Tr. 536).  On November 1, Plaintiff saw Dr. William B. Faircloth to get a second surgical opinion; she reported still having significant left leg, back, and buttock pain (Tr. 543-47).  The Doctor noted that Everett was wearing a back brace and had pain over the left sacroiliac joint; sitting straight leg raise was negative bilaterally.  Toe and heel walking, as well as gait, were normal; strength in all extremities was normal with no paraspinal muscle spasm.  Faircloth's assessment was left sacroiliitis and thoracic/lumbosacral neuritis/radiculitis for which he prescribed Lyrica.[5]  Six days later, Plaintiff had an

---

[4]**Error! Main Document Only.***Lortab* is a semisynthetic narcotic analgesic used for "the relief of moderate to moderately severe pain." *Physician's Desk Reference* 2926-27 (52nd ed. 1998).

[5]*Lyrica* is used for the management of neuropathic pain.  **Error!**

8

injection in the sacroiliac joint (Tr. 542); having had good results, another injection was given three weeks later (Tr. 541).  On December 13, 2012, D.O. Rush examined Everett for her low back pain, radiating into the left foot, that she rated at two; the Doctor diagnosed hip pain and post-laminectomy syndrome in the lumbar region for which he prescribed Vicodin[6] and Flexeril (Tr. 537-40).  Rush recommended that Everett increase her activity as tolerated but avoid aggravating activities.  PT was ordered, consisting of nine sessions over a month's time, during which Plaintiff showed improvement with overall lower extremity strength and her Trendelenburg gait; she still had weak hip extensors and her symptoms had not improved with stair climbing and certain transitional activities (Tr. 572-73; *see generally* Tr. 571-601).

On January 24, 2013, Osteopath Rush noted that Everett was "doing much better following her surgery as well as physical therapy.  Leg pain and radiating symptoms have resolved" (Tr. 610).  She reported that she was still experiencing discomfort in her left hip and low back with increased activities, including standing or walking up steps; Rush noted Plaintiff ambulated very well without any significant antalgic pattern

---

**Main Document Only.***Physician's Desk Reference* 2517 (62nd ed. 2008).

[6]**Error! Main Document Only.***Vicodin* is a class three narcotic used "for the relief of moderate to moderately severe pain."  *Physician's Desk Reference* 1366-67 (52nd ed. 1998).

9

(Tr. 610-13). She had full internal and external rotation of the left hip; straight leg raising was unremarkable; the Fabere maneuver continued to cause discomfort in the anterior hip joint. Rush thought Everett was doing "quite well," recommending she continue with—and add to—her home exercises and begin to wean herself off of Lyrica (Tr. 612). On March 20, 2013, an MRI of the left hip showed that Everett was at risk for acetabular impingement syndrome though there was no evidence of advanced degenerative change, avascular necrosis, or acute traumatic injury (Tr. 609). Five days later, Rush noted the MRI and deferred to Everett's Gynecologist before proceeding with further treatment (Tr. 606-08).

At the evidentiary hearing, Plaintiff testified that she stood five foot, six inches and weighed 182 pounds (Tr. 193; *see generally* Tr. 191-202). Everett took medications regularly that helped some, but not completely; she had talked to her doctors about the inadequacy of her drugs, but they did not know what to do about it (Tr. 194). Plaintiff described her duties in the work she had performed (Tr. 195-96). She left her last job because her husband took a job promotion in another city and, on the day they were moving, they were involved in a motor vehicle accident; Everett has not worked since then because she could not sit or stand for very long (Tr. 197-98). Plaintiff stated she could walk for forty-five minutes and could drive but did

10

not out of fear (Tr. 198).  Everett can bathe, dress, and groom herself; her daughter does most of the housework because Plaintiff would be in bed for two days if she did it herself (Tr. 199).  Everett did the grocery shopping, but her husband pushed the cart and loaded and unloaded them; she could fold clothes, but did not put them in the washer or dryer (Tr. 199-200).  Plaintiff has pain in her back, hip, and into the front of her thigh and back of her calf; she takes medications, but they cause drowsiness and sleepiness, so she has to take naps daily (Tr. 200-01).  Everett would like to work, but it caused her too much pain (Tr. 202).

The Court will now take up Plaintiff's claims, the first of which is that the ALJ improperly discredited her testimony.  More specifically, Everett asserts that the ALJ did not properly consider her complaints of pain (Doc. 10, pp. 13-18).

The standard by which the Plaintiff's complaints of pain are to be evaluated requires "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (citing *Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986)).  The Eleventh Circuit

11

Court of Appeals has also held that the determination of whether objective medical impairments could reasonably be expected to produce the pain was a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence."  *Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir.), *vacated for rehearing en banc*, 774 F.2d 428 (1985), *reinstated sub nom. Hand v. Bowen*, 793 F.2d 275 (11th Cir. 1986). Furthermore, the Social Security regulations specifically state the following:

> statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. § 404.1529(a) (2015).

Following his summary of the medical evidence, the ALJ made the following determination:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable

12

> impairments could reasonable be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.
>
> While the medical evidence of record reveals that the claimant has DDD of the lumbar spine, the claimant's alleged severity of pain is not supported by diagnostic tests or objective examinations.[7] On October 22, 2012, a MRI of the claimant's lumbar spine revealed post-op changes with improved central canal diameter, mild right and moderate left foraminal encroachment and possible scar formation at L5-S1 and mild central canal narrowing at L4-5 (Exhibit 18F, p. 2).  The claimant's conditions improved with surgery and the diagnostic tests post-surgery do not suggest that the claimant's DDD is anything greater than moderate.  Moreover, objective examinations, as fully discussed above, revealed the claimant had a normal gait, she was negative for straight leg raising, but she had full strength in her upper and lower extremities, her deep tendon reflexes were present and normal, she had full internal and external rotation of the hip, manual muscle testing was normal, fabere maneuver caused some discomfort, but muscle testing for abduction and adduction was normal and she had no neurological deficits (Exhibit 17F, p. 3; Exhibit 22F, p. 7).  These objective and diagnostic test findings are not consistent with the alleged incapacitating impairments and indicate the claimant's impairments may not be as severe or debilitating as alleged.
>
> The medical evidence of record revealed

---

[7]The Court notes that this paragraph actually begins with the following language:  "In terms of the claimant's alleged impairments, he appears to be able to do a range of medium work, as set forth by the claimant's residual functional capacity (RFC).  This is consistent with the limitations indicated by the other evidence in this case."  This language, obviously, was incorrectly inserted into the ALJ's determination as it is inconsistent with the balance of his opinion.  Therefore, the Court will disregard it.

13

that the claimant's DDD was primarily located in L5-S1 and her symptoms improved after surgery.  Moreover, her hip pain improved with physical therapy.  On January 24, 2013, the claimant was noted as doing quite well following surgery and physical therapy and she was advised to wear a back brace for any heavy activities (Exhibit 22F, p. 3).  The medical evidence suggests improvement with treatment and there is insufficient medical evidence of record that would support the claimant could not do sedentary work.

Additionally, the claimant has significant activities of daily living that are inconsistent with a debilitating impairment.  She has no problems with personal care, she drives, she does some light housework, she cooks, she goes grocery shopping, folds clothes and does laundry.  The claimant helps to care for her husband, who was also injured in the car accident, she cares for her dog, plays with her granddaughter, reads, plays cards, watches television and movies and visits with her family.  She goes out to eat on a regular basis and attends doctor's appointments (Exhibits 4E, 5E; Testimony).  Moreover, the claimant previously reported that she was not working because she was caring for her husband, her pain interfered without [sic] only some activities of daily living and her pain did not prevent her from working (Exhibit 2F, pp. 22-23; Exhibit 3F, p. 5; Exhibit 4F, p. 1).  Without significant limitations on her activities of daily living, the undersigned believes the claimant overstated the impact of her medically determinable impairments.  Essentially, the claimant possesses the ability to perform the physical and mental activities necessary to perform the above residual functional capacity.

Although the claimant does appear to have some limitations, her assertions are not consistent with the medical evidence of record.  The claimant is clearly able to do

14

> a range of sedentary work, as noted in the
> residual functional capacity.  Thus, the
> claimant's allegations of limitations are
> not credible to the extent they conflict
> with the residual functional capacity.

(Tr. 173-74).

In bringing this claim, Everett challenges the ALJ's characterization of the evidence, particularly that presented in statements by Plaintiff and her husband (Doc. 10, pp. 14-15; *see* Tr. 295-311).  The Court will now summarize those statements.

In a statement completed on April 2, 2012, Everett's husband stated that he and his wife are together all of the time at home; she can prepare simple meals (making sandwiches or a bowl of cereal) once or twice a week (Tr. 295-97).  She can do laundry and light house cleaning, though it takes all day because she has to take breaks every ten-to-fifteen minutes because of her back pain (Tr. 297).  She drives and goes grocery shopping every two-to-three weeks for an hour or two (Tr. 298).  Everett can play cards and board games for an hour at a time; she regularly goes to appointments, the grocery store, and her granddaughter's school (Tr. 299).  She wears a back brace (Tr. 301).

In her own statement of the same date, Everett listed, among her daily chores, washing and drying a load of clothes and straightening the house, taking a break every ten minutes (Tr.

303). Plaintiff can prepare meals including sandwiches, cereal, meatloaf, soup, and eggs (Tr. 306). Everett drives to the grocery store and shops for about an hour every two weeks; she regularly goes to doctor appointments, her mother's house, and restaurants (Tr. 307-08). Plaintiff has a back brace that she wears when she is having pain from too much standing or sitting (Tr. 310).

The Court also notes, that, on July 27, 2011, Everett told her Physical Therapist that she was "not working due to her husband's pain and injuries. . . . She enjoys working, golfing, and bowling for fun and spending time with family" (Tr. 368). The ALJ cited this information in addition to the husband's and wife's statements in finding Plaintiff's testimony non-credible (Tr. 174).

The Court finds that these statements provide substantial support for the ALJ's conclusions and do not support Everett's assertions of disability. More importantly, though, the medical evidence does not support her assertions. There is no medical opinion in this record that Plaintiff's pain in incapacitating as alleged. Curiously, although Everett asserts a disability onset date of February 18, 2011, the first medical note of record comes nearly five months later; the evidence from that point onward demonstrates that although Plaintiff has endured pain during the period under consideration, the evidence shows

16

improvement in her impairments. By her own statements to her treating sources, the medical treatment provided relieved her asserted pain and inability. Everett's claim that the ALJ failed to properly consider her pain is without merit.

Plaintiff next claims that the ALJ failed to properly develop the record. More specifically, she argues that the ALJ should have ordered orthopaedic and mental consultations to determine her capabilities (Doc. 10, pp. 8-13). The Eleventh Circuit Court of Appeals has required that "a full and fair record" be developed by the ALJ even if the claimant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). However, the ALJ "is not required to order a consultative examination as long as the record contains sufficient evidence for the [ALJ] to make an informed decision." *Ingram v. Commissioner of Social Security Administration*, 496 F.3d 1253, 1269 (11th Cir. 2007) (*citing Doughty v. Apfel,* 245 F.3d 1274, 1281 (11th Cir. 2001)).

The Court first notes that Everett asserts no mental impairments in her application for benefits (Tr. 265-66), in any of the reports completed in the processing of her application (Tr. 278-94, 303-19, 331-32), or even in the Fact Sheet presented to this Court (Doc. 10). In that light, asserting that a mental evaluation should have been ordered by the ALJ is counterintuitive.

17

Everett also asserts that a physical consultation should have been ordered because of all of her orthopaedic issues. The Court rejects this assertion as the record is abundant with the treatment record of Plaintiff's physical problems. A failure of those records to support Everett's assertion of disability is an insufficient reason to order further evaluation. This claim is of no merit.[8]

Plaintiff's final claim is that the Appeals Council did not properly consider newly-submitted evidence. Everett references one hundred fifty-three pages of evidence (Doc. 10, pp. 18-20; *see* Tr. 1-115, 123-57, 627-29).

The Court notes that a disability claimant can present new evidence at any stage of the administrative proceedings. 20 C.F.R. ¶¶ 404.900(b) and 416.1400(b) (2015); *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1261 (11th Cir. 2007). If the evidence is first presented to the Appeals Council, the Council considers it only if it relates "to the period on or before the date of the [ALJ's] hearing decision." 20 C.F.R. §§ 404.970(b) and 416.1470(b). The Court will now review the submitted evidence and the Appeals Council's

---

[8]To the extent that Plaintiff attempts to assert a claim that the ALJ should have called a Vocational Expert to testify as to Everett's ability to work (*see* Doc. 10, p. 9), the Court rejects it. First, it appears as a bare assertion with no supporting argument. Second, as the ALJ found that Plaintiff could return to her past previous work, there was no need to call on the services of a Vocational Expert.

18

consideration of it.

On June 11, 2013, Orthopaedist Robert C. Baird, III noted Everett's complaints of pain, at a level two of ten; his exam revealed that she was in no acute distress, with mild pain, but full range of motion (Tr. 629).  Nevertheless, he ordered an MRI that demonstrated that the superior aspect of the left hip was torn (Tr. 627-28).

The Appeals Council found that this evidence, predating the ALJ's determination by six days, provided no basis for changing the ALJ's decision (Tr. 117).

The Appeals Council also reviewed evidence that post-dated the ALJ's decision and found that it concerned medical events unrelated to the period under consideration as it came at a later time (Tr. 117).  The Court will now review that evidence.

On July 26, 2013, Dr. Jeffrey Conrad, with the Orthopaedic Group, noted Everett's complaint of sudden left shoulder pain, as of December 10, 2011, that she rated as two of ten; in spite of full ROM and strength, as well as stable ligaments, in the shoulder, he ordered an x-ray that demonstrated bursitis (Tr. 147).  Following left hip arthroscopy on August 23, Plaintiff reported much improvement, with little pain, as of September 3, 2013 (Tr. 134-44, 148-57).

The Court finds that the Appeals Council properly considered the newly-submitted evidence and determined that it

would not change the ALJ's decision.  The left hip tear was a new diagnosis, as shown by an MRI of March 20, 2013, less than three months earlier, that had failed to disclose it (Tr. 609).  Though that evidence pre-dates the ALJ's decision, it is a diagnosis of a new problem; the Court finds that even the subsequent treatment records, exceeding the ALJ's consideration period, provides no basis for remand in that it fails to identify new functional limitations or functional limitations of disabling degree.  Everett's claim otherwise is without merit.

Everett has brought three claims in bringing this action.  All are without merit.  Upon consideration of the entire record, the Court finds "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perales*, 402 U.S. at 401.  Therefore, it is **ORDERED** that the Secretary's decision be **AFFIRMED**, *see Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir. 1980), and that this action be **DISMISSED.**  Judgment will be entered by separate Order.

DONE this 8th day of October, 2015.

s/BERT W. MILLING, JR.
UNITED STATES MAGISTRATE JUDGE

20